# Exhibit A



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
PEARSALL IMMIGRATION COURT

**Respondent Name:**
ELGAMAL, HAYAM SALAH

**To:**
Lichter, Laura L.
1601 Vine St.
Denver, CO 80206

A-Number:
246-493-451

Riders:
In Custody Redetermination Proceedings

Date:
09/19/2025

### ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☐ Denied, because

☑ Granted. It is ordered that Respondent be:
  ☐ released from custody on his own recognizance.
  ☑ released from custody under bond of $ 15,000.00
  ☑ other:
      This bond order applies to the entire family, consolidated as follows:
      246-493-451 (lead), HAYAM SALAH ELGAMAL;
      246-493-452 (rider), HABIBA SOLIMAN;
      246-493-453 (rider), ▓▓▓▓▓▓▓▓▓▓;
      246-493-454 (rider), ▓▓▓▓▓▓▓▓▓▓;
      246-493-455 (rider), ▓▓▓▓▓▓▓▓▓▓; and
      246-493-456 (rider), ▓▓▓▓▓▓▓▓▓▓.

      To be clear, the bond total is $15,000.00 for all family members together (not $15,000.00 for each separate respondent).

☑ Other:
    The issues to be addressed through this custody redetermination case include:

    (1) Whether the respondents are subject to mandatory detention under INA § 236(c)(1)(D) as an alien who is deportable under INA § 237(a)(4)(B);

    (2) Alternatively, if the respondents are not subject to mandatory detention, whether the respondents pose a threat to national security or would be a danger to the

1

community; and

(3) Alternatively, if the respondents are not subject to mandatory detention, whether the respondents pose such a substantial flight risk that no bond amount will ensure their appearance at future hearings.

## (1)  MANDATORY DETENTION:

Applicable regulations generally do not confer jurisdiction on an Immigration Judge over custody or bond determinations governing those aliens who are subject to mandatory detention. See 8 C.F.R. § 1003.19(h)(2)(i)(D). However, an alien may seek a determination by an Immigration Judge that the alien is "not properly included within" certain of the regulatory provisions which would deprive the Immigration Judge of bond jurisdiction, including the mandatory detention provisions at issue in this matter. See 8 C.F.R. § 1003.19(h)(2)(H); Matter of Joseph, 22 I&N Dec. 799, 802 (BIA 1999).

In the present case, DHS argues that the respondents are subject to mandatory detention under INA § 236(c)(1)(D) as an alien who is deportable under INA § 237(a)(4)(B).  INA § 237(a)(4)(B) relates to "terrorist activities" and provides that "any alien who is described in subparagraph (B) or (F) of section 212(a)(3) is deportable."  According to INA § 212(a)(3)(B)(i)(IX), an alien who is the "spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years, is inadmissible." INA § 212(a)(3)(B)(ii) provides the following exception: "Subclause (IX) of clause (i) does not apply to a spouse or child--- (I) who did not know or should not reasonably have known of the activity causing the alien to be found inadmissible under this section; or (II) whom the consular officer or Attorney General has reasonable grounds to believe has renounced the activity causing the alien to be found inadmissible under this section."

The threshold issue is whether the respondents have met their burden of proof to demonstrate that they are not properly included in the category of aliens subject to mandatory detention for bond purposes.  See 8 C.F.R. § 1003.19(h)(2)(ii).

The lead respondent's husband, who is also the father of the riders in this case, is currently detained pending numerous federal criminal charges related to his alleged attack on demonstrators at a peaceful Jewish event held to support hostages in Gaza. He will be refered to as "husband/father" in this bond decision.  The husband/father is not a party to the respondents' removal or bond cases.  For purposes of the ground of inadmissibility under INA 212(a)(3)(B), the parties in the present case do not dispute that the husband/father's (alleged) actions in attacking the demonstrators with a homemade flamethrower and Molotov cocktails, resulting in numerous injuries and at least one death, constitutes "terrorist activity."  As neither party disputes the familial relationship between the respondents and the husband/father, there would appear to

2

be no dispute that the respondent and her children would be subject to the ground of inadmissibility under INA § 212(a)(3)(B)(i)(IX) as the spouse and children of the husband/father who engaged in terrorist activities.

The point of disagreement between the parties is whether one of the exceptions to the ground of inadmissibility applies, as specified in INA § 212(a)(3)(B)(ii).  The first exception applies to a spouse or child who did not know or should not reasonably have known of the activity causing the alien to be found inadmissible under this section.  INA § 212(a)(3)(B)(ii)(I).  The second exception applies to a spouse or child whom the consular officer or Attorney General has reasonable grounds to believe has renounced the activity causing the alien to be found inadmissible under this section.  INA § 212(a)(3)(B)(ii)(II).  If at least one of the exceptions applies to the present case, the respondents would not be aliens described in INA § 212(a)(3)(B) and, thus, not subject to mandatory detention.  See INA § 237(a)(4)(B); INA 236(c)(1)(D).

Regarding the first exception, the information and evidence in the bond record supports a finding that the respondents did not know or should not reasonably have known of the husband/father's terrorist activity.  According to FBI Special Agent Chan's testimony at a federal preliminary hearing on June 18, 2025, he confirmed that law enforcement spoke with the family very shortly after the incident and the lead respondent and oldest daughter reported that what was described was "totally out of character."  Bond Exhibit 2 at 89.  Agent Chan also confirmed that the family expressed shock at what they were being told had occurred.  Id.  Agent Chan also confirmed that "they had no inkling at all that [the husband/father] was planning to do this or even thinking about doing anything like this."  One article DHS submitted indicates that the husband/father told investigators that "no one knew about his plans." Bond Exhibit 4 at 24.  Another article  DHS submitted states, "[husband/father] said no one knew about his plans and he never talked to his wife or family about it."  Id at 19.  Another article DHS submitted indicates that the husband/father "told authorities he purchased his supplies at Home Depot as he drove in a Toyota Prius from his home in Colorado Springs to the Pearl Street Mall to follow through on his plans that he had been making for a year." Id. at 18.  The Court has also considered the oldest daughter's testimony at the bond hearing on September 12, 2025.  She described the limited interactions with her father due to his work as an Uber driver in Denver, how he was only at home one or two days each week, and how she did not know about his day-to-day activities.  Although she spoke with the husband/father at family dinners when he was home, their conversations were limited to talking about day-to-day life and how things were going at school.  She also testified that she was not aware of any political opinions her father may have possessed.  All of this information would appear consistent with Special Agent Chan's testimony as noted above, specifically, that the family was unaware of the husband/spouse's activities.

However, DHS in its brief (filed September 17, 2025) argues that "there is an increased likelihood [the eldest daughter] reasonably should have known about her father's intent or terrorist activity," citing generally to "daily communications between

3

[the eldest daughter] and her father, and the fact that [the eldest daughter] shared a residence with her father." DHS Brief at 7.  The DHS's reliance solely on such common and generalized circumstances such as a family member's daily communication and shared residence, without more, is not sufficiently persuasive to conclude that the respondents knew or reasonably should have known about the terrorist activities.  Notably, another article DHS submitted, dated June 3, 2025, includes a statement by DHS Secretary Kristi Noem, "We are investigating to what extent his family knew about the heinous attack, if they had knowledge of it, or if they provided support to it." Bond Exhibit 4 at 21.  Yet, the DHS has not pointed to any evidence gleaned from the investigation that has purportedly been underway for over three months.  Accordingly, the Court finds that the respondents have established that they are subject to the exception under INA § 212(a)(3)(B)(ii)(I) in that the respondents did not know or should not reasonably have known of the husband/father's terrorist activity.

Regarding the second exception, the information and evidence in the bond record support a finding that there are reasonable grounds to believe the respondents have renounced the activity causing the husband/father to be inadmissible.  As DHS acknowledges in its brief, a reasonable belief of renunciation may be derived from circumstantial evidence including the spouse or child's behavior, to include, among other things, cooperating with law enforcement. DHS Brief at 9.  It appears that the lead respondent has in fact been cooperating with law enforcement by turning over relevant evidence during the investigation.  According to the transcript from the federal preliminary hearing on June 18, 2025, the husband/father's cellular phone, which was deemed relevant to the investigation, was provided to law enforcement.  Bond Exhibit 2 at 72-73.  An article DHS submitted references the lead respondent as the one who provided the evidence to law enforcement: "[h]is wife later brought the iphone to officials, according to court documents."  Bond Exhibit 4 at 15.

In addition to cooperating with law enforcement, shortly after the husband/father's attack on the demonstrators, the respondents, through their attorney, posted a statement on social media indicating the family's shock over the incident and declaring that there is never an excuse for hurting innocent people.  The statement also confirms that the family has been cooperating with law enforcement officials, and condolences were expressed to the families who are suffering as a result of the attack.  A copy of the statement was filed on September 17, 2025, and is hereby marked as Bond Exhibit 6.  The respondent's counsel also filed a brief on September 17, 225, wherein she points the Court to various public media outlets that have circulated the family's statement: "https://www.cnn.com/2025/06/18/us/colorado-attack-suspect-family-ice-detention"; "https://krdo.com/news/2025/06/18/please-listen-to-our-story-wife-of-boulder-terror-attack-suspect-speaks-out/"; and "https://kdvr.com/news/boulder-terror-attack/wife-of-boulder-terror-attack-suspect-speaks-out-we-are-treated-like-animals/".  The Court is also taking note that at the bond hearing on September 12, 2025, the lead respondent and eldest daughter remained adamant in their disapproval of the husband/father's actions.  They also reaffirmed their steadfastness for the expressions made in their social media post from

4

June 18, 2025.  Bond Exhibit 6.

Considered in the aggregate, the respondents' expressions against the husband/father's actions, coupled with their initial and continued cooperation with law enforcement, persuade this Court that there are reasonable grounds to believe the respondents have renounced the activity.  Accordingly, the Court finds that the respondents have established that they are subject to the exception under INA § 212(a)(3)(B)(ii)(II).

As the Court has determined that at least one of the exceptions applies to the present case, the respondents would not be aliens described in INA § 212(a)(3)(B) and, thus, not subject to mandatory detention. See INA § 237(a)(4)(B); INA 236(c)(1)(D).

(2) DANGER

At the bond hearing on September 12, 2025, the DHS indicated that it is not raising danger as an issue for purposes of custody redetermination.  The Court would simply note that such a position would seem to belie the DHS argument that the respondents are subject to mandatory detention vis-à-vis "terrorist activities" and their knowledge thereof.

(3) FLIGHT RISK

The DHS argues that the respondents pose such a substantial flight risk that no bond amount will ensure their appearance at future hearings. The DHS filed a brief on September 17, 2025, outlining its arguments pertaining to flight risk. The DHS also filed supplemental documents (Tabs A-J, pages 55-122) on September 17, 2025, and that submission is hereby marked as Bond Exhibit 10.

The respondents have submitted evidence from sponsors who will provide them with support and lodging.  Bond Exhibit 2 at 1-24.  The respondent has also filed evidence describing the details of the sponsor's house, a letter from the sponsor describing the studio apartment where the respondents will reside, and photographs of the studio apartment where the respondents will reside.  Those documents were filed on September 17 and 18, 2025, and are hereby marked as Bond Exhibits 7, 8, and 9, respectively.

The DHS posits that the studio apartment "is not a habitable, safe place for five children and an adult."  DHS Brief at 11.  The record does not support such a contention.  See, generally, Bond Exhibit 10; see also Bond Exhibits 7-9.  Furthermore, at the bond hearing on September 12, 2025, DHS argued that the bond sponsors do not share a close tie to the respondents and "could change their minds" about sponsoring the respondents.  In its brief, DHS asserts that "the relationship between the respondents and the sponsors is highly tenuous, as is the willingness of the sponsors to house a family of six rent free."  DHS Brief at 11-12.  DHS then argues that the sponsors "are not valid, reliable, and credible."  Id.  While the DHS may raise some valid concerns that could justify consideration of an elevated bond

5

amount, the Court places weight on the letters and financial documents from the joint sponsors indicating their willingness and ability to sponsor the respondents as evidence that the respondents will have a fixed address in the U.S. if released.  See Bond Exhibit 2 at 1-24; see also Bond Exhibits 7-9.

The DHS also argues that the respondents are a flight risk "because their asylum claims lack merit."  DHS Brief at 12.  The Court recognizes that, for various reasons, eligibility for asylum can be difficult to establish, a factor that could justify consideration of an elevated bond amount.  The Court also notes that, as represented by the parties at the bond hearing on September 12, 2025, the respondents entered the United States in August 2022, and they filed their affirmative asylum applications with U.S. Citizenship and Immigration Services (USCIS) in approximately September 2022.  While it is not disputed that they overstayed their visa, their diligent efforts in filing for affirmative relief undermine the notion that they would abscond when it comes to following through on their efforts to qualify for relief to remain the United States legally.  Given the prior efforts regarding affirmative relief, the circumstances demonstrate that the respondents are motivated and have incentive to appear at future hearings.

The Court recognizes that the respondents do not have significant family ties in the United States, a factor that could justify an elevated bond amount.  That being said, the Court notes that the respondents have submitted numerous letters of support from their local community.  Bond Exhibit 2 at pages 25-39. The lead respondent has also submitted several certifications reflecting her continued education in the United States pertaining to information technology. Id. at 40-44.  The respondents have no criminal record.  The respondents have also continued to cooperate with law enforcement regarding the investigation into the husband/father's federal criminal case.

The Court has considered all record evidence for the issue of flight risk.  The respondents have a fixed address in the United States; they have been in the United States since 2022 and have demonstrated diligent efforts in seeking affirmative relief; they have no criminal history and they have continued to cooperate with law enforcement.  Although they do not have significant family ties in the United States, there is a showing of significant community support for the respondents.  The Court does not ignore that certain factors do increase the risk of flight, to include their immigration violation of overstaying their visa, the speculative nature of asylum claims generally, and lack of significant family ties in the United States.  However, these factors do not establish that the respondents pose such a flight risk that no bond amount would ensure their appearance at future hearings.  The Court has determined that the bond amount of $15,000.00 (total, for all 6 family members) will help mitigate the flight risk and ensure that the respondents appear at all future hearings and abide by all immigration obligations.

As such, the continued bond hearing scheduled for September 19, 2025, at 1:30pm, is

hereby cancelled.

*[signature]*

Immigration Judge: Adams, Justin 09/19/2025

Appeal:  Department of Homeland Security: ☐ waived  ☑ reserved
         Respondent:                      ☐ waived  ☑ reserved

Appeal Due: 10/20/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : ELGAMAL, HAYAM SALAH | A-Number : 246-493-451

Riders:

Date: 09/19/2025  By: ████████████ , Court Staff