UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **Hayam EL GAMAL et al.,** § | | |
| § | | |
| *Petitioners-Plaintiffs*, § | | |
| § | | |
| v. § | | Case No. 1:25-cv-01618 |
| § | | |
| **Kristi Noem et al.,** § | | |
| § | | |
| *Respondents-Defendants*. § | | |
| § | | |

**MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Petitioners-Plaintiffs, Hayam El Gamal ("Ms. El Gamal") and her five children (collectively "Petitioners")—Habiba Soliman, E.S., A.S., H.S., and O.S.—respectfully request this Court to issue a temporary restraining order preventing the application of the Department of Homeland Security's ("DHS") automatic stay of the Immigration Judge's ("IJ") September 19, 2025 order releasing Petitioners on bond and Order to Show Cause as to why a preliminary injunction should not issue.

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................................................ ii

**INTRODUCTION** ........................................................................................................................ 1

**BACKGROUND** .......................................................................................................................... 1

**LEGAL STANDARD** .................................................................................................................. 2

**ARGUMENT** ............................................................................................................................... 3

    I.  **Ms. El Gamal and Her Children Are Likely to Succeed on the Merits.** ........................ 3

        A.  *Ms. El Gamal and Her Children Are Likely to Succeed on the Merits of Their Fifth Amendment Procedural Due Process Claim.* ................................................................. 3

        B.  *Ms. El Gamal and Her Children are Likely to Succeed on the Merits of Their Substantive Due Process Claim.* ....................................................................................... 6

    II.  **The Remaining Factors Favor the Issuance of a Temporary Restraining Order and Preliminary Injunction.** ............................................................................................... 7

**CONCLUSION** ............................................................................................................................ 8

**CERTIFICATE OF CONFERENCE** ........................................................................................ 10

**CERTIFICATE OF SERVICE** .................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Altagracia Almonte-Vargas v. Elwood*, No. 02-cv-2666, 2002 WL 1471555 (E.D. Pa. June 28, 2002) .................................................................................................................................. 6

*Arias Gudino v. Lowe*, No. 1:25-cv-00571, 2025 WL 1162488 (M.D. Pa. Apr. 21, 2025)............. 8

*Elrod v. Burns*, 427 U.S. 347 (1976)............................................................................................. 8

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ..................................................................................... 6

*Günaydn v. Trump*, No. 25-cv-01151, 2025 WL 1459154 (D. Minn. May 21, 2025) .................... 6

*Herrera v. Knight*, No. 2:25-cv-01366, 2025 WL 2581792 (D. Nev. Sept. 5, 2025)...................... 5

*Jacinto v. Trump*, No. 4:25-cv-3161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025) ....................... 5

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ................................................................... 4

*Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025) . 5, 6, 7

*Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025).................... 5

*Mathews v. Eldridge*, 424 U.S. 319 (1976).................................................................................... 4

*Matter of Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006) ..................................................................... 1

*Mohammed H. v. Trump*, No. 25-cv-1576, 2025 WL 1692739 (D. Minn. June 17, 2025) ............. 7

*Nken v. Holder*, 556 U.S. 418 (2009)............................................................................................ 3

*Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473 (N.D. Tex. 2023) ............................. 8

*Opulent Life Church v. City of Holly Spring, Miss.*, 697 F.3d 279 (5th Cir. 2012)......................... 8

*Speaks v. Kruse*, 445 F.3d 396 (5th Cir. 2006).............................................................................. 3

*Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020) ....................................................................... 3

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................................. 3

*Zadvydas v. Davis*, 533 U.S. 679 (2001)................................................................................... 4, 6

*Zavala v. Ridge*, 310 F. Supp. 2d 1071 (N.D. Cal. 2004) ............................................................. 5

**Statutes**

8 U.S.C. § 1226(a) ................................................................................................................ 1

**Treatises**

Charles Alan Wright & Arthur R. Miller, 11A Federal Practice and Procedure § 2948.1 (3d ed. 1998) ................................................................................................................................ 8

**Regulations**

8 C.F.R. § 1003.19(i)(2) .................................................................................................. 1, 2

8 C.F.R. § 1003.6(c)(4) ....................................................................................................... 2

8 C.F.R. § 1003.6(c)(5) ....................................................................................................... 2

## INTRODUCTION

On September 19, 2025, IJ Justin Adams, San Antonio Immigration Court, ordered Petitioners released on bond, finding that they had met their burden to establish they do not pose a danger to the community and are not a flight risk. *See* Pet. ¶¶ 26-35. At a bond hearing held on September 12, 2025, the Department of Homeland Security ("DHS") conceded that Ms. El Gamal and her five children (aged 4 to 18) are not a danger to the community. Nevertheless, after the IJ granted bond, DHS invoked the automatic stay provision, 8 C.F.R. § 1003.19(i)(2); *see* Pet., Exh. B. This automatic stay could keep Ms. El Gamal and her children confined for another three months or more, effectively doubling the length of their current period of detention.

It is now apparent that Respondents will stop at nothing to keep Ms. El Gamal and her children confined as punishment for the actions of their husband and father, Mohamed Soliman, even though the Federal Bureau of Investigations ("FBI") Special Agent in Charge ("SAC") testified in Mr. Soliman's criminal proceedings that the family did not know about his intentions. Without judicial intervention, the government's punitive gamesmanship will persist.

## BACKGROUND

Respondents are currently detaining Ms. El Gamal and her five children at Dilley Family Processing Center in Dilley, Texas. After initially seeking habeas relief, Ms. El Gamal and her children exercised their right to seek a custody redetermination before an IJ pursuant to 8 U.S.C. § 1226(a). In order to grant relief on bond, an IJ must determine that an individual is not a danger to the community and that conditioning release on the payment of a bond would address any risk of flight they may present. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006).

At the September 12, 2025 bond hearing, DHS conceded that Petitioners were not a danger to the community, but argued that they were flight risks. In support of this argument, DHS claimed

(1) that Petitioners' underlying asylum claims lack merit and (2) that the apartment in which their sponsors have agreed to house them is "not a habitable" space. Pet. ¶ 24. The IJ rejected these arguments, as well as DHS' argument that Petitioners were subject to the mandatory detention. As such, the IJ issued a written bond decision ordering Petitioners' release on bond. *Id.* ¶ 26.

Instead of resulting in Ms. El Gamal and her children's release, the IJ's decision prompted an effort by DHS to keep Petitioners confined for no lawful purpose. By regulation, which Petitioners assert is ultra vires and therefore unlawful, DHS may unilaterally prevent an IJ's custody redetermination from going into effect whenever DHS believes a non-citizen "should not be released." 8 C.F.R. § 1003.19(i)(2). This remains the case until the Board of Immigration Appeals ("BIA") decides the custody redetermination appeal or ninety days pass. *Id.* § 1003.6(c)(4). Since DHS has ten days to file a notice of appeal before the ninety-day clock begins, the automatic stay provision can extend detention post-bond-order for 100 days. After this period expires, the IJ's order remains stayed for up to thirty additional days while the BIA considers any request for a discretionary stay. *Id.* § 1003.6(c)(5). Thus, the regulations permit DHS to unilaterally trigger a 130-day period of confinement *after* an IJ has ordered a non-citizen released without *any administrative procedures* to contest or challenge that confinement.

In a stark departure from prior agency practice and despite Petitioners' lack of criminal history and DHS' own concession that they do not pose a danger to the community, DHS filed an automatic stay in Petitioners' case. In effectuating the automatic stay, DHS did not have to make any showings whatsoever, and Petitioners did not have an opportunity to respond. DHS merely had to file a piece of paper to keep Ms. El Gamal and her children confined.

## LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006). "The first two factors are the most critical." *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020). When the government is the opposing party, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

The Court should grant Petitioners' request and issue a temporary restraining order and preliminary injunction preventing the application of DHS's automatic stay of the IJ's bond order during the pendency of this action and any administrative appeal of the IJ's order. First, Petitioners are likely to succeed on the merits of their Fifth Amendment procedural due process claim because the automatic stay provision keeps them physical confined for months in contravention of an IJ bond order without any showing by the government or any opportunity to be heard. Petitioners are also likely to succeed on the merits of their substantive due process claim because, as the September 12, 2025 custody hearing makes clear, Petitioners' confinement serves no lawful purpose. Second, this unlawful confinement unquestionably inflicts irreparable harm on Ms. El Gamal and her young children. Finally, the equities and public interest favor Petitioners because the harm they face is severe, the cost to Respondents is minimal, and vindicating constitutional rights is always in the public interest.

**I.   Ms. El Gamal and Her Children Are Likely to Succeed on the Merits.**

   *A. Ms. El Gamal and Her Children Are Likely to Succeed on the Merits of Their Fifth Amendment Procedural Due Process Claim.*

DHS's use of the automatic stay provision to perpetuate Ms. El Gamal and her children's confinement violates their right to procedural due process. When the government deprives someone of a liberty interest, "the procedures attendant upon that deprivation [must be] constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted). The constitutional sufficiency of procedures is determined by weighing the three factors elucidated by the Supreme Court in *Mathews v. Elridge*: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through [available] procedures," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 334-35 (1976). Each factor favors Petitioners.

**First**, Ms. El Gamal and her children have a strong liberty interest in their release pending a DHS appeal of the IJ bond order. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 679, 690 (2001). DHS' invocation of an automatic stay of Petitioners' release means that Ms. El Gamal and her children could face another three months or more of unlawful confinement without any process whatsoever.

**Second**, the DHS automatic stay power creates a serious risk of erroneous deprivation. The stay takes effect without requiring DHS to meet any standard and provides Petitioner no opportunity to challenge its imposition. Indeed, the automatic stay is not bound by *any* procedural safeguards that would prevent unjustified detention. Here, the risk of erroneous deprivation is particularly stark because DHS conceded at Petitioners' custody hearing that they pose no danger to the community and the IJ carefully considered and rejected both arguments the government made regarding flight risk.

Several district courts have held that the automatic stay's procedure-less deprivation of liberty creates an unconstitutional risk of erroneous deprivation. *See, e.g.*, *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) (holding the automatic stay provision facially unconstitutional); *Herrera v. Knight*, No. 2:25-cv-01366, 2025 WL 2581792, at *12 (D. Nev. Sept. 5, 2025) ("Detention pursuant to the automatic stay after the government already failed to establish a justification for it, with no process afforded to challenge the detention as arbitrary, is facially violative of procedural due process."); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025, at *14 (D. Md. Aug. 24, 2025) ("The automatic stay is a violent distortion of proper, legitimate process whereby the Government, as though by talisman, renders itself at once prosecutor and adjudicator."); *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *13 (D. Minn. Aug. 15, 2025) ("[T]he automatic stay provision, 8 C.F.R. § 1003.19(i)(2), creates a substantial risk of erroneous deprivation of Petitioner's interest in being free from arbitrary confinement."); *Jacinto v. Trump*, No. 4:25-cv-3161, 2025 WL 2402271, at *3 (D. Neb. Aug. 19, 2025) ("[T]here is a large risk of erroneous deprivation of Petitioner's liberty interest through the procedures used in this case, and there are available alternative procedures which would ameliorate those risks.").

**Third**, Respondents' legally cognizable interests in civil immigration detention—to prevent danger to the community or flight from immigration enforcement—do not require Ms. El Gamal and her children's continued confinement. Indeed, DHS *does not dispute* that Petitioners do not pose a danger to the community and DHS received a full opportunity during the bond hearing to contest and rebut the record evidence that substantiates Petitioners' community ties and support and incentives to appear in immigration court. To the extent any risk of flight remained, it was addressed by the IJ through the requirement of a $15,000 bond.

5

As the IJ recognized, Ms. El Gamal and her children have substantiated why they can and should be at liberty during the pending removal proceedings. Having made its case at the bond hearing and being free to appeal, the government faces no significant burden that would justify permitting its use of this extraordinary unilateral power to keep Ms. El Gamal and her children confined. *See Günaydn v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025) ("[T]he automatic stay regulation is . . . a rare and somewhat exceptional action in the first place."). *Cf. Leal-Hernandez*, 2025 WL 2430025, at *14-15 ("[T]he court finds it inappropriate to stay its order so that the Government may seek a discretionary stay through the BIA."); *Altagracia Almonte-Vargas v. Elwood*, No. 02-cv-2666, 2002 WL 1471555, at *5 (E.D. Pa. June 28, 2002) ("We decline the Government's alternative request that we refer this matter to the INS District Director for an individualized custody determination.").

As such, Ms. El Gamal and her children are likely to succeed on the merits of their procedural due process claim challenging the application of the automatic stay provision to their case.

> B. *Ms. El Gamal and Her Children are Likely to Succeed on the Merits of Their Substantive Due Process Claim.*

The record of the bond hearing before the IJ makes abundantly clear that Respondents have no lawful purpose to justify Ms. El Gamal and her children's ongoing confinement. "Freedom from bodily restrain has always been at the core of the liberty protected by the Due Process Clause from arbitrary government actions." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Supreme Court has recognized two justifications for civil immigration confinement: preventing danger to the community and flight from immigration enforcement. *Zadvydas*, 533 U.S. at 690. At best, Ms. El Gamal and her children's detention serves neither purpose and, at worst, constitutes unlawful

6

punishment. Either way, Petitioners' ongoing confinement violates their substantive due process rights.

To date, Ms. El Gamal and her children have submitted reams of evidence demonstrating that their continued detention is not necessary to serve any legally permissible purpose, including declarations from community members, Ms. Soliman's testimony, Petitioners' lack of criminal record, and substantial rebuttal evidence countering DHS' speculations about flight risk. *See* Pet. ¶¶ 33-34. In response, DHS offered next to nothing, and its representative conceded that Petitioners present no danger to the community, and indeed, that Ms. Soliman met the exceptions to mandatory detention. All of the foregoing was considered by the IJ who found that Petitioners met their burden establishing eligibility for release. As such, Petitioners are likely to show that Respondents have no cognizable interest that justifies their continued confinement.

Likewise, DHS' invocation of the automatic stay of Ms. El Gamal and her children's release pursuant to the IJ's bond order is totally unmoored from any lawful purpose. Indeed, the automatic stay was invoked precisely because DHS failed to convince the IJ that Petitioners' detention was justified. Because the automatic stay provision operates "[s]imply by fiat [] without introducing any proof," *Mohammed H. v. Trump*, No. 25-cv-1576, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025), it has enabled the government to prolong Ms. El Gamal and her children's detention without justification. "As such, the automatic stay results in Petitioner[s'] arbitrary detention violative of [their] substantive due process rights guaranteed by the Fifth Amendment." *Leal-Hernandez*, 2025 WL 2430025, at *13 (collecting cases).

## II. The Remaining Factors Favor the Issuance of a Temporary Restraining Order and Preliminary Injunction.

The remaining factors—irreparable harm, the balance of equities, and the public interest—favor an order compelling Petitioners' immediate release pursuant to the IJ bond order. Such an

order is necessary to prevent further irreparable harm to Ms. El Gamal and her children, would not impair the government's legitimate interests, and is in the public interest.

The violation of an individual's constitutional rights is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). "'The loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Opulent Life Church v. City of Holly Spring, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod*, 427 U.S. at 373); *see also* Charles Alan Wright & Arthur R. Miller, 11A Federal Practice and Procedure § 2948.1 (3d ed. 1998) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary."). "In the immigration context, unlawful detention is a sufficient irreparable injury." *Arias Gudino v. Lowe*, No. 1:25-cv-00571, 2025 WL 1162488, at *13 (M.D. Pa. Apr. 21, 2025).

The merged third and fourth *Winter* factors also favor granting Ms. El Gamal and her children preliminary relief. "[A]n injunction protecting Petitioner[s'] interest in being free from unconstitutional detention is in the public interest." *Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473, 485 (N.D. Tex. 2023).

## CONCLUSION

The record in this case is clear. The government conceded that Ms. El Gamal and her children—including children as young as four years old—pose no danger. The IJ rejected DHS' arguments that they pose a flight risk. Having failed to justify Petitioners' detention to a neutral adjudicator, Respondents have unilaterally decreed it shall continue regardless. Such extraordinary government action is incompatible with the guarantees of the Due Process Clause.

8

As such, Petitioners respectfully request that this Court issue a temporary restraining order preventing the effect of the automatic stay and ordering Petitioners' release on the bond and an Order to Show Cause as to why a preliminary injunction should not issue.

Dated: October 6, 2025                                                   Respectfully Submitted,

*/s/Rebecca Webber*                                                     */s/ Eric Lee*
Rebecca Webber                                                           Eric Lee*
Tex. Bar No. 24060805                                                    Mich. Bar No. P80058
WEBBER LAW                                                               */s/ Christopher Godshall-Bennett*
4228 Threadgill St.                                                      Christopher Godshall-Bennett*
Austin, TX 78723                                                         D.C. Bar No. 1780920
Tel: (512) 537-8833                                                      LEE & GODSHALL-BENNETT LLP
Fax: (202) 333-6470                                                      Tel: (202) 949-2526
rebecca@rebweblaw.com                                                    Fax: (202) 333-6470
                                                                         eric@leegodshallbennett.com
                                                                         chris@leegodshallbennett.com
*/s/Niels Frenzen*
Niels Frenzen*                                                           *Pro Hac Vice* forthcoming
Cal. Bar No. 139064
USC GOULD SCHOOL OF LAW
IMMIGRATION CLINIC
699 Exposition Blvd.
Los Angeles, CA 90089
Tel: (213) 740-8933
Fax: (213) 740-5502
nfrenzen@law.usc.edu

9

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(G), the undersigned affirms that it was not possible for counsel for Petitioners-Plaintiffs to arrange a conference with counsel for the Respondents-Defendants before filing this motion, because no attorney has noticed an appearance in this matter yet for Respondents-Defendants. Counsel for Petitioners-Plaintiffs will arrange a conference as quickly as is practicable as soon as the U.S. Attorney's Office notices appearances in this case.

*/s/ Eric Lee*
Eric Lee

Attorney for Petitioners-Plaintiffs

## CERTIFICATE OF SERVICE

  I hereby certify that on October 6, 2025, counsel for Petitioners-Plaintiffs provided a copy of this Motion for a Temporary Restraining Order and Preliminary Injunction by email to the following individuals:

Justin R. Simmons
U.S. Attorney
U.S. Attorney's Office
Western District of Texas
601 NW Loop 410, Ste. 600
San Antonio, TX 78216
justin.simmons@usdoj.gov

Mary F. Kruger
Civil Chief
U.S. Attorney's Office
Western District of Texas
601 NW Loop 410, Ste. 600
San Antonio, TX 78216
mary.kruger@usdoj.gov

Stephanie Rico
Civil Process Clerk
U.S. Attorney's Office
Western District of Texas
601 NW Loop 410, Ste. 600
San Antonio, TX 78216
stephanie.rico@usdoj.gov

              */s/ Eric Lee*
              Eric Lee

              Attorney for Petitioners-Plaintiffs