IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HAYAM EL GAMAL; HABIBA SOLIMAN; E.S.; A.S.; H.S.; and O.S., <br><br>Petitioners-Plaintiffs, <br><br>VS. <br><br>KRISTI NOEM, in Her Official Capacity as Secretary of the Department of Homeland Security; PAMELA BONDI, in Her Official Capacity as U.S. Attorney General; TODD LYONS, in His Official Capacity as Acting Director of Immigration and Customs Enforcement; SYLVESTER ORTEGA, in His Official Capacity as Acting Director of ICE San Antonio Field Office; and JOSE RODRIGUEZ, Jr., in His Official Capacity as Administrator of Dilley Immigration Processing Center, <br><br>Respondents-Defendants. | CIVIL ACTION NO. SA-25-CV-1261-FB |

## **ORDER CONCERNING MOTION FOR TEMPORARY RESTRAINING ORDER**

Before the Court is Petitioners' Motion for Temporary Restraining Order and Preliminary Injunction (docket #2), requesting the issuance of a temporary restraining order (TRO) and preliminary injunction preventing the application of the Department of Homeland Security's (DHS) automatic stay of the Immigration Judge's (IJ) bond order during the pendency of this action and any administrative appeal of the IJ's bond order. In response to the motion (docket #13), Respondents assert a TRO is not warranted because the automatic stay simply preserves the status quo, does not deprive the petitioners of any procedural due process, and does not prolong or make detention indefinite. Petitioners in reply (docket #14) maintain this Court should find, just as every other court which has addressed this question has done, the automatic stay provision violates the Due Process Clause of the Fifth Amendment.

The Court has carefully considered the motion, response, and reply along with the arguments and authorities contained therein and finds, based in part on *Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379 (W.D. Tex. Sept. 8, 2025), that the Motion for Temporary Restraining Order (docket #2) shall be granted and the automatic stay of the bond determination shall be vacated.

However, the dissolution of the automatic stay shall itself be stayed for fourteen (14) days from the date hereof to allow the Government time to seek a ruling on its Motion for Discretionary Stay pursuant to 8 C.F.R. § 1003.19(i)(1) filed with the Board of Immigration Appeals (BIA) filed on October 15, 2025, seeking to stay the custody redetermination decision of the Immigration Judge issued September 19, 2025, pending the BIA's adjudication of Government's appeal of that decision and to advise the Court of the status of that motion and any ruling received as well as update on the status of this case and any other immigration court hearings which may have been held.

### *Background*

Lead Petitioner, Hayam El Gamal, is a native of Saudi Arabia and citizen of Egypt and was detained by Immigration and Customs Enforcement (ICE) and placed into removal proceedings after she overstayed her tourist visa. She and her five children, petitioners Habiba Soliman (age 18), E.S. (age 16), A.S. (age 9), and H.S. and O.S. (both age 4), are currently being detained at the Dilley Family Processing Center in Dilley, Texas. A bond hearing was held on September 12, 2025, at which the Department of Homeland Security (DHS) conceded the Petitioners were not a danger to the community, but argued that they were flight risks. In support of this argument, DHS claimed (1) the Petitioners' underlying asylum claims lacked merit and (2) that the apartment in which their sponsors have agreed to house them is "not a habitable" space. On September 19, 2025, an immigration judge granted Petitioners' release from ICE custody upon payment of a $15,000 bond. ICE reserved appeal of that bond decision, and in the exercise of discretion, filed an automatic stay of the order with the Board of Immigration Appeals under 8 C.F.R. § 1003.19(i)(2).

On October 2, 2025, ICE filed a Notice of Appeal with the BIA. ICE included a preliminary brief in support of the appeal, arguing that Petitioners are subject to mandatory detention where the evidence shows lead petitioner is "described in" the Immigration and Nationality Act (INA) as "the spouse of an alien who is removable as described in INA § 212(a)(3)(B)." Respondents argue the referenced section of the INA refers to terrorist activity and renders a spouse or a child inadmissible based solely on a familial relationship to an alien who committed the conduct.

In this case the terrorist activity being referred to occurred on June 1, 2025 when lead Petitioner's husband of 19 years yelled "Free Palestine" and threw Molotov cocktails at demonstrators attending a march for Israeli hostages in Colorado, resulting in twelve people being injured. On appeal, ICE claims that neither of the two statutory exceptions for this terrorism inadmissibility ground applies to lead Petitioner, and even if they did, she remains a flight risk and should not be released on bond. On October 15, 2025, ICE filed a motion for discretionary stay of the bond decision under 8 C.F.R. § 1003.19(i)(1). Based on the briefing received at this time, both the bond appeal and the discretionary stay motion remain pending before the BIA.

In Petitioners' TRO motion, Lead Petitioner (hereinafter Petitioner or she) challenges the constitutionality of the automatic stay provision and requests her immediate release from custody pursuant to the $15,000 bond claiming the automatic stay of the bond order deprives her of due process, both substantive and procedural. Petitioner challenges the lawfulness of the automatic stay and claims the Government is using continued detention to punish her for the alleged acts of her husband and are keeping her confined for no lawful purpose. On the other hand, ICE asserts Petitioner is a flight risk if released from custody and is appealing on that basis. Petitioner claims that the unilateral nature of the stay regulation is ultra vires and therefore unlawful because DHS may, whenever it believes a non-citizen should not be released, unilaterally prevent a custody redetermination from going into effect. This stay can remain in place for up to 130 days after an IJ has ordered a non-citizen released without any administrative procedures to contest or challenge that confinement. Petitioner also argues she faces irreparable harm while detained during removal proceedings and that the government's interests are minimal in comparison.

### *Legal Standard*

In order for this Court to issue a temporary restraining order, petitioner must establish the following four factors: substantial likelihood of success on the merits; substantial threat that failure to grant the injunction will result in irreparable injury; the threatened injury outweighs any damage that the injunction may cause the opposing party; and the injunction will not disserve the public interest. *Allied Marketing Group, Inc. v. DCL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

A temporary restraining order serves the purpose of maintaining the status quo and preventing irreparable harm until a final decision on injunctive relief can be made by the court. *Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *1 (W.D. Tex. Sept. 8, 2025). The court has discretion in the granting or denial of a TRO. *Id.* TROs are generally not appealable and are "'usually effective for only very brief periods of time, far less than the time required for an appeal . . . and are then generally supplanted by appealable temporary or permanent injunctions.'" *Id.* (quoting *Board of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994)). Because a temporary restraining order is an extraordinary remedy, it will be granted only if the movant/petitioner carries her burden of persuasion on all four factors. *Id.*

### *Arguments and Analysis*

Petitioners contend with respect to the first factor, likelihood of success on the merits, that their Fifth Amendment procedural due process claim has merit because the automatic stay provision will keep them in physical confinement for months, despite the IJ's order granting them a bond, "without any showing by the government or any opportunity to be heard." Motion for TRO, docket #2 at page 7. Likewise, petitioners assert their substantive due process claim also has merit because as the custody hearing made clear, their continued confinement fails to serve a lawful purpose. As to the second factor, petitioners maintain their continued unlawful confinement inflicts irreparable harm, and Petitioners maintain the third and fourth factors are satisfied by the severe harm they face, the minimal cost to the Respondents, and the vindication of their constitutional rights.

In response, Respondents asserts the Petitioners are not likely to succeed on the merits of their claims for several reasons:

> (1) ICE's unreviewable discretionary decision to seek a stay of the bond decision during an appeal of a nonfinal agency action simply preserves the status quo during administrative review; (2) the automatic stay does not deprive Petitioner of any procedural due process, because the bond appeal process itself and the corresponding removal proceedings provide Petitioner with built-in protections, including ample notice and a full opportunity to respond, through counsel, to the reasons for her continued detention and the charges pending against her; (3) pre-removal order detention is facially constitutional; (4) Petitioner's detention is not unconstitutionally prolonged (or indefinite) in violation of her substantive due process rights, because those proceedings, including the bond appeal, will eventually conclude; and (5) there

is no indication the bond appeal is frivolous or otherwise likely to be dismissed due to a change in circumstances in the removal proceedings.

Response, docket #13 at page 4.

In Reply, Petitioners again remind the Court that on September 19, 2025, the IJ ordered them to be released on bond following an adversarial hearing in which they had the burden of proof. Respondents, on that same day, filed for an automatic stay of the IJ's order pursuant to 8 C.F.R. § 1003.19(i)(2). Petitioners acknowledge that they are not challenging their removal proceedings or the Respondents' "'underlying discretionary decision to detain [them] during removal proceedings,'" but are challenging the "constitutionality of the automatic stay authority itself, both as applied to Petitioners and on its face." Reply, docket #14 at page 1. While Respondents maintain that courts "differ on the constitutionality of the automatic stay provision," they fail to cite a single case in which a court found it to be constitutional. *Id.* at 2.

Accordingly, Petitioners urge that the result in their case should be the same as it has been in every other case in which it has been raised:

> that the automatic stay provision violates the Due Process Clause of the Fifth Amendment as laid out in *Mathews v. Elridge*, 424 U.S. 319, 334-35 (1976). It maximizes "the risk of erroneous deprivation" of an individual's liberty interest, *Mathews*, 424 U.S. at 334-35, because it applies by definition where a non-citizen detainee has already proven that their detention is unjustified to a neutral adjudicator. The risk is compounded by the fact that the Department of Homeland Security need not make any showing to justify continued detention. Any cognizable interests Respondents have in civil immigration detention are protected by the bond hearing itself and their ability to seek a procedurally sound discretionary stay on a bond order. The *Mathews* factors militate strongly for Petitioners who are exceedingly likely to succeed on the merits of their constitutional challenge to the automatic stay provision.

*Id.* at pages 2-3. The Court agrees.

Here, as in *Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379 (W.D. Tex. Sept. 8, 2025), the issue before the Court is the lawfulness of the automatic stay which is the current basis for the petitioners' detention, and the Court finds Judge Pulliam's Memorandum Opinion and Order in that case on point and instructive.

Likelihood of Success on the Merits

As explained in *Martinez v. Noem*, "[n]oncitizens are entitled to the process of the law under the Fifth Amendment." *Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *2

(W.D. Tex. Sept. 8, 2025). In determining whether a detainee's due process rights are violated by a civil detention, a three-part test set forth in *Mathews v. Eldridge*, 414 U.S. 319 (1976), is applied by the courts. *Id.* This three-part test requires a court to weigh the following factors:

(1)   the private interest that will be affected by the official action;

(2)   the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3)   the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews*, 414 U.S. at 335).

In their motion, Petitioners maintain they have satisfied each of the three factors as follows:

**First**, Ms. El Gamal and her children have a strong liberty interest in their release pending a DHS appeal of the IJ bond order. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 679, 690 (2001). DHS' invocation of an automatic stay of Petitioners' release means that Ms. El Gamal and her children could face another three months or more of unlawful confinement without any process whatsoever.

**Second**, the DHS automatic stay power creates a serious risk of erroneous deprivation. The stay takes effect without requiring DHS to meet any standard and provides Petitioner no opportunity to challenge its imposition. Indeed, the automatic stay is not bound by any procedural safeguards that would prevent unjustified detention. Here, the risk of erroneous deprivation is particularly stark because DHS conceded at Petitioners' custody hearing that they pose no danger to the community and the IJ carefully considered and rejected both arguments the government made regarding flight risk.

Several district courts have held that the automatic stay's procedure-less deprivation of liberty creates an unconstitutional risk of erroneous deprivation. *See, e.g., Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) (holding the automatic stay provision facially unconstitutional); *Herrera v. Knight*, No. 2:25-cv-01366, 2025 WL 2581792, at *12 (D. Nev. Sept. 5, 2025) ("Detention pursuant to the automatic stay after the government already failed to establish a justification for it, with no process afforded to challenge the detention as arbitrary, is facially violative of procedural due process."); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025, at *14 (D. Md. Aug. 24, 2025) ("The automatic stay is a violent distortion of proper, legitimate process whereby the Government, as though by talisman, renders itself at once prosecutor and adjudicator."); *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *13 (D. Minn. Aug. 15, 2025) ("[T]he automatic stay provision, 8 C.F.R. § 1003.19(i)(2), creates a substantial risk of erroneous deprivation of Petitioner's interest in being free from arbitrary confinement."); *Jacinto v. Trump*, No. 4:25-cv-3161, 2025 WL 2402271, at *3 (D. Neb. Aug. 19, 2025) ("[T]here is a large risk of erroneous deprivation of Petitioner's

liberty interest through the procedures used in this case, and there are available alternative procedures which would ameliorate those risks.").

**Third**, Respondents' legally cognizable interests in civil immigration detention—to prevent danger to the community or flight from immigration enforcement—do not require Ms. El Gamal and her children's continued confinement. Indeed, DHS does not dispute that Petitioners do not pose a danger to the community and DHS received a full opportunity during the bond hearing to contest and rebut the record evidence that substantiates Petitioners' community ties and support and incentives to appear in immigration court. To the extent any risk of flight remained, it was addressed by the IJ through the requirement of a $15,000 bond.

As the IJ recognized, Ms. El Gamal and her children have substantiated why they can and should be at liberty during the pending removal proceedings. Having made its case at the bond hearing and being free to appeal, the government faces no significant burden that would justify permitting its use of this extraordinary unilateral power to keep Ms. El Gamal and her children confined. *See Günaydn v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025) ("[T]he automatic stay regulation is . . . a rare and somewhat exceptional action in the first place."). *Cf. Leal-Hernandez*, 2025 WL 2430025, at *14-15 ("[T]he court finds it inappropriate to stay its order so that the Government may seek a discretionary stay through the BIA."); *Altagracia Almonte-Vargas v. Elwood*, No. 02-cv-2666, 2002 WL 1471555, at *5 (E.D. Pa. June 28, 2002) ("We decline the Government's alternative request that we refer this matter to the INS District Director for an individualized custody determination.").

As such, Ms. El Gamal and her children are likely to succeed on the merits of their procedural due process claim challenging the application of the automatic stay provision to their case.

Motion for TRO, docket #2 at ECF pages 7-10.

In addition, Petitioners assert they will also prevail on their substantive due process claim because it is clear from the record of the bond hearing held before the IJ, that Respondents do not have a lawful purpose which justifies their continued confinement of the Petitioners. Petitioners note that the "Supreme Court has recognized two justifications for civil immigration confinement: preventing danger to the community and flight from immigration enforcement." Here, Petitioners contend their confinement serves neither purpose as evidenced by the IJ judge's findings and instead "constitutes unlawful punishment." *Id.* More specifically, Petitioners contend:

To date, Ms. El Gamal and her children have submitted reams of evidence demonstrating that their continued detention is not necessary to serve any legally permissible purpose, including declarations from community members, Ms. Soliman's[1] testimony, Petitioners' lack of criminal record, and substantial rebuttal

---

[1] Ms. Soliman is the 18-year-old petitioner in this case.

-7-

> evidence countering DHS' speculations about flight risk. *See* Pet. ¶¶ 33-34. In response, DHS offered next to nothing, and its representative conceded that Petitioners present no danger to the community, and indeed, that Ms. Soliman met the exceptions to mandatory detention. All of the foregoing was considered by the IJ who found that Petitioners met their burden establishing eligibility for release. As such, Petitioners are likely to show that Respondents have no cognizable interest that justifies their continued confinement.
>
> Likewise, DHS' invocation of the automatic stay of Ms. El Gamal and her children's release pursuant to the IJ's bond order is totally unmoored from any lawful purpose. Indeed, the automatic stay was invoked precisely because DHS failed to convince the IJ that Petitioners' detention was justified. Because the automatic stay provision operates "[s]imply by fiat [] without introducing any proof," *Mohammed H. v. Trump*, No. 25-cv-1576, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025), it has enabled the government to prolong Ms. El Gamal and her children's detention without justification. "As such, the automatic stay results in Petitioner[s'] arbitrary detention violative of [their] substantive due process rights guaranteed by the Fifth Amendment." *Leal Hernandez*, 2025 WL 2430025, at *13 (collecting cases).

*Id.* at ECF pages 10-11.

As explained in *Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025), a petitioner has a "significant private interest in being free from detention and '"[t]he interest in being free from physical detention"' is '"the most elemental of liberty interests."' (quoting *Hamdi v. Rumsfield*, 541 U.S. 507, 529 (2004)). Here, all six Petitioners remained confined at the Dilley Family Processing Center in Dilley, Texas. Therefore, the first *Mathews* factor supports the Petitioners' Fifth Amendment violation claim.

Under the second *Mathews* factor, a court "must 'assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025) (quoting *Günaydin v. Trump,* No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *8 (D. Mass. May 21, 2025)). Here as in *Martinez v. Noem (*hereinafter *Martinez*), the "risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition prevailed at their bond hearing." *Id.* At the bond hearing in this case, the IJ found the Petitioners were not a danger to the community, not a flight risk, and not subject to mandatory detention. The IJ also determined a bond total of $15,000 for all family members and not $15,000 for each member. Despite this finding by a neutral decision-maker that

a bond was warranted, "the automatic stay provision allowed Respondents, who lost their bond argument, to unliterally [sic] deprive [Petitioners] of [their] liberty.  Other courts considering the automatic stay provision have found this problematic as well." *Id.*  Moreover, "the stay provision does not require Respondents to consider or demonstrate any individualized facts or show a likelihood of success on the merits." *Id.*  In fact, 8 C.F.R. § 1003(19)(i)(2) provides "that the stay is automatic and the bond 'shall be stayed' upon filing of the form EOIR-43." *Id.*  Because liberty is the norm in our society, the stay of an order which directs the release of an individual in detention is considered an "especially extraordinary" step such that "'detention prior to trial or without trial is the carefully limited exception.'" *Id.*  (citing *Günaydin,* 2025 WL 1459154, at *9 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).  Therefore, the automatic stay regulation has been described as turning "these well-established procedural principles on their heads" and carrying a "significant risk of erroneous deprivation." *Id.*  Moreover, as noted in *Martinez*, there is an available alternative, a request for a discretionary emergency stay from the Board of Immigration Appeals, which "mitigates the concern about Respondents usurping the neutral adjudicatory role and provides additional safeguards that the automatic stay provision lacks." *Id.*  That alternative as been sought in this case, but as previously mentioned, the Court is not aware of the status of that request. Based on the foregoing, the Court finds the Petitioners have satisfied the second *Mathews* factor with respect to their claim concerning 8 C.F.R. § 1003(19)(i)(2).

The third *Mathews* factor requires the Court to weigh "the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interest in persisting with the automatic stay and the burden of additional or substitute requirements." *Id.* at *4.  Here as in *Martinez*, there is no showing that the Petitioners are a risk to public safety and despite the Respondents' arguments at the bond hearing, that Petitioners are a flight risk.  Therefore, as in *Martinez,* the Court finds Petitioners' continued detention outweighs the conclusory interests asserted by the Respondents.  Accordingly, Petitioners have succeeded at this stage of the proceedings to demonstrate the likelihood success on the merits in demonstrating, as in *Martinez*, the "automatic

stay regulation found at 8 C.F.R. 1003(19(i)(2) violates the Petitioners' procedural due process rights under the Fifth Amendment" and likewise satisfies the first requirement for obtaining a TRO. *Id.*

### Threat of Irreparable Harm, Balance of Equities, and Public Interest

With respect to the remaining requirements necessary to obtain a TRO, irreparable harm, the balance of equities, and the public interest, Petitioners contend all three elements favor an order which compels their immediate release from custody to prevent further irreparable harm. Petitioners cite to several cases which have found that the loss of constitutional freedoms for even minimal periods of time "unquestionably constitutes irreparable injury," and in the immigration context, "unlawful detention is a sufficient irreparable injury." Motion for TRO, docket #2 at page 12 (*Opulent Life Church v. City of Holly Spring, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod*, 427 U.S. at 373); *Arias Gudino v. Lowe*, No. 1:25-cv-00571, 2025 WL 1162488, at *13 (M.D. Pa. Apr. 21, 2025). Petitioners have also met their burden with regard to the balance of equities and the public interest by showing the IJ determined at the hearing that Petitioners did not pose a danger to the community, to which Respondents conceded, and did not pose a flight risk despite Respondents' arguments to the contrary. *See Martinez v. Noem*, Case No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *5 (W.D. Tex. Sept. 8, 2025). Accordingly, the Court finds Petitioners have satisfied the necessary elements for obtaining a TRO.

This Court also finds the following notes set forth in *Martinez*, are equally applicable to this case:

> the only holding that can be taken from this Order is that [Petitioners have] made a sufficient showing to justify preserving the status quo for a deeper inquiry— no more, no less. The status quo being [Petitioners'] release on bond, as reflected in the last word on detention—Judge [Adam's] order releasing [Petitioners] on bond.
>
> The Court also notes its awareness of ICE's role in immigration enforcement and the historical deference owed to federal agencies. However, where conflict exist between any deference that may be due and constitutional traditions and norms, the Court must step in to resolve the dispute.

*Id.* (case citation and citation to the record omitted).

*Conclusion*

Accordingly, based on the foregoing and the arguments and authorities presented by the Petitioners in their Motion and Reply, IT IS HEREBY ORDERED that the Motion for Temporary Restraining Order and Preliminary Injunction (docket #2) is GRANTED as to Petitioners' request for a temporary restraining order, and the Court hereby VACATES the automatic stay of Immigration Judge Justin Adams order to release the Petitioners from custody under a total bond of $15,000 for all family members together.

However, as in *Martinez*, this Court finds that the order to vacate the automatic stay should likewise be in and of itself STAYED for a period of fourteen (14) days from the date hereof to provide the Respondents time to find out the status of their request for an emergency stay from the Board of Immigration Appeals pursuant to 8 C.F.R. § 1003.19(i)(1) and/or pursue their request for such a stay.

Therefore, IT IS FURTHER ORDERED that the automatic stay is DISSOLVED effective at noon on **Tuesday, December 2, 2025**. If no emergency stay is obtained by this date, Petitioners are permitted to post bond and be released in accordance with the rulings and conditions set forth in Immigration Judge Adam's bond determination on September 19, 2025, **with the added condition by this Court that Petitioner Hayem El Gamal be fitted with a GPS-enabled ankle monitor provided by DHS at the time of her release.**

IT IS FURTHER ORDERED that the parties provide continuing Joint Status Reports beginning on Friday, November 21, 2025, and continuing on each subsequent Friday until further order of the Court. All reports shall be filed no later than 5 p.m.

It is so ORDERED.

SIGNED this 18th day of November, 2025.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE